GEORGE F. HUBER, BY HIS NEXT FRIEND, JOHN F. HUBER, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY ET AL.

FILED APRIL 5, 1905.   No. 13,743.

Evidence in an action to recover damages for personal injuries examined, and *held* to justify a peremptory instruction of a verdict for the defendant.

ERROR to the district court for Merrick county: JAMES G. REEDER, JUDGE. *Affirmed.*

*J. E. Dorsheimer* and *Matthew Gering,* for plaintiff in error.

*John Patterson, J. W. Deweese* and *F. E. Bishop, contra.*

AMES, C.

The trial judge directed a verdict for the defendant in an action to recover damages for a personal injury. The plaintiff prosecutes error.

The line of the defendant company extends northerly and southerly through Central City in this state. At the time the railroad was built, a good many years ago, the

whole of the town was on the west side of its track, the
eastern boundary of the village being the western line of
the railroad right of way. Afterwards an addition was
surveyed and platted adjacent to the eastern line of the
right of way. Extending easterly and westerly through
the original townsite, and having for its eastern terminus
the railroad right of way, is a public highway known as
Eighteenth street. In the addition is platted a narrow
street so situated that it might be, to the extent of its width,
a continuation of Eighteenth street, but it has never been
actually used as such. There has never been a public street
or highway opened or established or used, except as below
stated, across the railroad right of way between the ter-
mini mentioned of the streets above named. On the con-
trary, the space upon the right of way between said termini
has at all times been occupied by the defendant by a fenced
inclosure for live stock yard purposes. About opposite of
the south line of Eighteenth street, which is several feet
south of the south line of the corresponding street in the
addition, is a gate in the stock yard inclosure which is left
open, or at least unfastened, when the latter is not in use.
Along the western boundary of the right of way has at all
times been maintained by the defendant an open ditch
several feet deep for drainage purposes, so that there has
never been actually or apparently a public thoroughfare
between the two streets at the point in question. There
are some dwelling houses in the addition, and some citizen
has laid a plank across the ditch at the south side of Eigh-
teenth street, and people have been more or less in the
habit of walking over the plank and through the yard,
when the latter has not been in use. It may be assumed,
though the evidence is conflicting in respect thereto, that
there has been worn by this means a path in the locality
described. But one block northward and one block south-
ward from this point, at Seventeenth and Nineteenth
streets respectively, public crossings were maintained by
the city and the defendant. Adjacent to the stock yard
on the north, and at about the north line of Eighteenth

street extended, the company maintained a water tank. Still further north some two blocks was the passenger station. Engines hauling trains through the city were furnished at this tank with a supply of water, and cinders were at the same time discharged upon the ground east of the track, north and south of the tank. The cinders were gathered up and carried away at intervals of a day or two, or two or three days at most. The heap of them that is alleged to have been the cause of the injury complained of lay north of the tank and was composed of fine, soot-like ashes, in shape like a sand dune some two or three feet high at its crown, which was about the same number of feet from the eastern rail of the track, the western edge of the heap being in contact with the rail. This heap was north of the north line of Eighteenth street extended, and some fifty or sixty feet north of the alleged path. On the occasion in question the plaintiff, then a boy between eleven and twelve years of age, and another boy of about the same age named Miller, crossed the plank over the ditch and, leaving the path, walked north along the right of way to a place north of the tank, where they crossed over to the east side in the hope, as the plaintiff testified, of seeing on an incoming train from the north a brother of Miller who was in the service of the defendant as brakeman. They idled about the tank and its vicinity until the train arrived and had stopped at the station, the engine had been detached, supplied with water and returned and recoupled to its load, and the train was ready to move forward on its journey. Then the Miller boy went some distance away to a straw stack, but the plaintiff went and stood on the heap of cinders just described. For what purpose he did so it is difficult to imagine. He says, in hope of catching a glimpse of the brother of his companion, Miller, in the caboose as the train sped past, but his companion was not with him, and he had never seen the brother and, of course, could not have recognized him. The alleged negligence of which he complains, and solely on account of which he seeks to recover, is that the cinders or

ashes were piled so near the track that the mound sloped gradually to the easternmost rail, and that he lost his balance and fell, and that by reason of the fact just mentioned he slid down the incline and his foot was thrust over the rail, where it was caught by a passing wheel and crushed, whereas, if the mound had been further away or if the cinders had been removed from immediate contact with the rail, his foot, upon his falling, would have come in contact with the rail on the outer side of the latter, and so would have been prevented from getting under the wheel and have escaped injury. In the light of the uncontradicted evidence this theory is incredible. The cars projected laterally from the track some two and a half feet, so that the outer part or side of them must have passed nearly or quite over the crown of the heap of cinders. The locality was visited immediately after the injury by witnesses called by the plaintiff, who testified that there were tracks apparently made by someone walking through the cinders, but that there was no indication that anyone had fallen on the mound or had slid down its slope under the train or toward the track. No one but the plaintiff was present when he received his injury or can testify how it was inflicted, but the circumstances are conclusive to the effect that it did not happen in the manner related by him. We do not think that it is incumbent upon us, or was upon the trial court or jury, to speculate about the matter.

Counsel for plaintiff contends that the cinder heap was an attractive object for children, and that children were in the habit of playing upon it with the knowledge of, and without objection by, the defendant. The first of these propositions is far from obvious, and the second is sharply disputed, and we think that both are immaterial. However "alluring" a pile of loose cinders may have been as a place of amusement, it is clear from the plaintiff's own story that it was not that character or feature of the ash heap that caused his presence upon it. His sole purpose, as it seems from his account, was to use the mound as an

34

eminence from which to look into a window of the passing caboose and discover the brakeman. He was allured, not by the ash heap, but by the caboose and brakeman. This fact clearly distinguishes this case from the so-called "Turn Table Cases." None of the defendant's employees knew of this object or of his presence there at the time, or had reason to suspect it. Besides, it would be carrying the presumption of ignorance and innocence in childhood to an extravagant length to suppose that an ordinarily active and intelligent boy, in the twelfth year of his age, who lived in the city within sight of and a few hundred yards distant from the scene of the accident, and who was familiar with town life and happenings, did not know that he exposed himself to danger by standing on the cinder heap while the train was passing. And again, it would be carrying the doctrine of permissive license a long way to hold, under circumstances like these, that the company had impliedly consented to the obstruction of the regular operation of its trains for the purpose of converting, not its right of way alongside its tracks, but its very roadbed into a playground for children. The contrary presumption is so great that it requires to be overcome, if not by direct and positive evidence, at least by circumstances of more cogency than those disclosed by this record.

We are of the opinion that the instruction of the district court was right, and recommend that the judgment be affirmed.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.